The People of the State of New York, Respondent, *v.* John J. Ryan, Appellant.

First Department, December 23, 1971.

*Irving Anolik* of counsel (*Lotwin, Kantrowitz, Goldman & Gutin,* attorneys), for appellant.

*David L. Levinson* of counsel (*Michael R. Juviler* with him on the brief; *Frank S. Hogan, District Attorney*), for respondent.

McGivern, J. P. The defendant, a discharged New York City policeman, had pleaded guilty to section 195.05 of the Penal Law (obstructing governmental administration), as a class A misdemeanor, the maximum penalty of which is one year. The charge arose out of the defendant's offering a sum of money to a New York State police officer for considerate testimony by the latter in the Federal court, in a case involving a friend of the defendant. The evidence against the defendant Ryan was obtained by tapes after interviews with him had been sought and arranged by the New York State officer, albeit Ryan did leave with him his phone number.

The Trial Justice, after making it plain that the defendant Ryan could be sentenced for one year, the maximum, said he would first obtain a probation report. Said the court: "You may go to prison or you may not, depending upon my evaluation

of the report." Actually, the probation report was incontestably favorable to the defendant. It revealed him as an honorably discharged veteran of the United States Navy, with four years in the submarine service, followed by 14 years of unblemished record with the Police Department. It also bared a home situation of the extremest tragedy: All three of his children were handicapped, two of them victims of congenital cerebral palsy, mentally retarded; and the third suffered from a spinal disease, was asthmatic, and had undergone three operations in the past two years. All three are treated at the United Cerebral Palsy Association Center. Further, it is revealed that Ryan's wife had suffered two mental breakdowns, and according to the family physician, as represented in the sentencing minutes, has bordered on the breakdown level for the past year, because of her husband's offense. The local school psychologist is also represented as saying that the defendant's presence in the home is indispensable to avoid complete emotional turmoil in the house. The minutes also indicate the receipt of no less than 75 letters from friends, neighbors, reporters, fellow policemen, all bearing witness to the tragic home situation and extolling the defendant as a husband and father who bore his lot with resignation and a stout heart.

Now, some blameless confusion enters into the sentencing process, the attorney for the defendant contending that he had been given to understand that the Assistant District Attorney would make no recommendation in respect of sentence and that a foreseeable sentence would be six months in jail. Said the attorney, Mr. Kantrowitz: "At the time Detective Ryan took the plea to interfering with government administration I had a conversation with Assistant District Attorney Conboy as to what plea he would take, and we discussed the possibility of an E felony, and he stated to me that if he pleaded to an E felony, that he would stand mute before the Court and make no recommendation, and he also stated that if he took the misdemeanor, that Mr. Ryan would get a six-month sentence.

"Now, I'm not saying that we made a deal, but what I am saying is that I left that meeting with Mr. Conboy with an understanding, and I related it to the defendant that Mr. Conboy was going to recommend a six-months sentence to this court."

The Assistant District Attorney, however, at sentence time said: "Now, Your Honor, the People recommend the maximum penalty of one year be imposed because of the nature of this corruption." And the court, in intoning sentence, said: "I am going to adopt the District Attorney's recommendation." True,

the District Attorney denies ever indicating to the defendant's attorney what he would recommend, should there be a plea. And we believe him. Yet, with commendable candor, he said on sentence day: "I indicated that it was in my judgment likely that a six-months sentence might be imposed here. I never represented to him or to his client or to his partner that I in any way presumed to influence your Honor; that under the circumstances I was giving him my best estimate and judgment of what a likely course would be should his client take a misdemeanor plea here."

We realize that in the beaten paths of plea consultations, many misunderstandings occur and that hope springs eternal in the hearts of defense counsel. And the foregoing colloquy represents the stuff of which these misunderstandings are made. (Cf. *People* v. *Granello,* 18 N Y 2d 823.) Thus, we intimate no criticism of the Trial Justice or the Assistant District Attorney. Both are to be commended. Both faced up to a difficult situation, and in the present public climate we fully understand their utterances.

However, when an appellate court is confronted with a plea *ad misericordiam,* it must take a broader view of all the facts and circumstances, measuring justice and the rights of society, punishment and the avoidance of cruelty. And mercy, in its proper place, is an attribute of an appellate court. The power is there. (See CPL 470.15.) The precedents sanction its use. (*People* v. *Zuckerman,* 5 N Y 2d 401; *People* v. *Miles,* 173 App. Div. 179, 183.)

And, in this case, a majority feel that in view of the completeness of the defendant's disgrace, his discharge from the department, his loss of pension, and the piteous spectacle of his stricken wife and handicapped children, all utterly reliant on his presence, his sentence can presently be mitigated without detriment to the needs and protection of society; and that the fulfillment of his jail sentence would add more to the immedicable woe of his family than it would punish him. We note also that his role in the Federal court indicates the defendant was more of a fool than a felon, that his motive seems to have been one of misguided help to a friend, that he apparently profited nothing, and that his friend emerged finally with a suspended sentence.

In extending mitigation in this case, moved by the poignant features of the defendant's home situation, we trust police officers in general will not regard this as a fixed attitude on our part or that we are easily melted. All police officers should know by now that for a transgression of their special trust, there usu-

ally follows dismissal, humiliation, loss of pension, and oft'times, jail.

However, in this case, although justification existed for the imposition of a jail sentence, nevertheless, under all the circumstances, the sentence imposed was unnecessarily excessive. The record discloses a proper case for the court's exercise of discretion to reduce the sentence pursuant to CPL 470.15. Accordingly: Judgment of conviction rendered November 4, 1971, Supreme Court, New York County (BIRNS, J.), should be modified upon the law and the facts, and in the exercise of discretion in the interest of justice, by reducing the sentence from imprisonment for a term of one year to a period of six months, and as so modified, affirmed.

STEUER, J. (dissenting). I would affirm the disposition of the Trial Judge. In this, as well as in many other appeals on the ground of severity of the sentence, a familiar practice of the sentencing procedure is too often ignored. A degree of mercy commensurate with the circumstances is afforded to the defendant by allowing him to plead to a crime materially lesser in degree than that charged. And when the court sentences the defendant to the maximum term for that lesser degree, it is then urged that this is excessive — oblivious of the fact that the crime with which the defendant is charged and upon which he could have been convicted would entail a much heavier sentence. Without disputing or minimizing the deplorable factors in this defendant's personal life set out in the majority opinion and which would call for sympathy, he did commit a very serious crime which strikes at the root of our judicial system and for that he received a minimum sentence.

NUNEZ and TILZER, JJ., concur with McGIVERN, J. P.; STEUER, J., dissents in an opinion, in which KUPFERMAN, J., concurs.

Judgment, Supreme Court, New York County, rendered on November 4, 1971, modified, upon the law and the facts, and in the exercise of discretion in the interest of justice, by reducing the sentence from imprisonment for a term of one year to a period of six months, and as so modified, affirmed.